# IN THE MATTER OF THE WILL OF POLLY KALUA, DECEASED.

## No. 887.

ERROR TO CIRCUIT COURT, SECOND CIRCUIT.

HON. W. S. EDINGS, JUDGE.

SUBMITTED FEBRUARY 3, 1916.            DECIDED FEBRUARY 19, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

WILLS—*undue influence—evidence.*

Where in the contest of a will the only evidence tending to show undue influence was testimony that the attorney who, acting under the instructions of testatrix, drew the will was a member and trustee of a church organization which was named as one of the beneficiaries in the will; and that such attorney, having him-

self first declined the request of testatrix that he act as executor and trustee under the will, suggested the name of a trust company to act in that capacity, which suggestion was adopted and acted upon by the testatrix, the evidence wholly fails to show any undue influence with respect to the making of the will and was insufficient to submit the issue to the jury.

WILLS—*contest—trial by jury—directing verdict.*

Upon the trial in the circuit court upon appeal from a judge sitting as a court of probate in the matter of the probate of a contested will, the contestant is entitled to have the issues tried by a jury, but the court may in proceedings of this sort, where the facts of the case require it, direct a verdict.

### OPINION OF THE COURT BY WATSON, J.

The defendant in error, Hawaiian Trust Company, Limited, named as executor and trustee in the will of Polly Kalua, deceased, made application to a judge of the second circuit court for the probate of said will. This petition was resisted by the widower and heir at law of the deceased (plaintiff in error here) on the grounds, as stated in his written "protest against the admission to probate," "That said instrument is not, and never was, in fact, or in law, the last will and testament of said Polly Kalua, and that the same does not, and never did, represent the true wishes and desires of said Polly Kalua in the premises; and that the same, if in fact signed or executed, published or declared by said Polly Kalua as and for her last will and testament (which this protestant hereby denies) then said instrument was so signed, executed, published and declared by her in ignorance of the contents and effect thereof; and that the signature to the execution, publication and declaration of said instrument as and for her last will and testament, if in fact made by said Polly Kalua (which such protestant hereby denies), was and were done and made as the result of improper and undue influence brought to bear upon her before and at the time of the execution, signature, publication or declaration thereof." After a hearing the circuit judge granted the prayer of the petition and the will was

admitted to probate. An appeal was taken to the circuit court and a jury trial was demanded and allowed. At the close of the contestant's case the proponent moved the court to direct a verdict in its favor. This motion was granted and a verdict was rendered as directed.

The main question now raised by contestant's assignments of error is whether there was sufficient evidence to go to the jury. Assuming in the contestant's favor that the somewhat vague protest filed by him properly raised the issues of execution, testamentary capacity, and undue influence, and that these issues were involved in the trial of the case in the circuit court, a careful reading of the evidence satisfies us that there is no testimony upon which by the utmost stretch of the imagination an argument can be based to sustain the charge that the instrument was not duly executed, or that the testatrix was not in the full possession of her mental faculties. Those features of the case are therefore eliminated.

Turning now to the testimony relied on by plaintiff in error to show undue influence, it comes from one witness, Mr. D. H. Case, the attorney who drew the will and who was one of the subscribing witnesses thereto. The will in controversy was executed on May 2, 1912, and is as follows:

"I, Polly Kalua, of Wailuku, County of Maui, Territory of Hawaii, wife of J. W. Kalua, declare this to be my last will and testament, and hereby expressly revoke all other wills by me heretofore made.

"I designate and appoint the Hawaiian Trust Company, Limited, a domestic corporation, with its principal office in the City and County of Honolulu, executor and trustee of this my will; said executor and trustee to give such bond, file such inventory or inventories, and render such accounts, as may from time to time be required by the court having jurisdiction of my estate and the trust created hereby.

"I give and bequeath all of my property of whatsoever nature and wheresoever situate, and of which I may die seized and possessed, either in my own name or in the name

of another in trust for me, unto my husband, J. W. Kalua, for and during his natural life *only;* he, my husband, during such period of time, to have the sole use and benefit of all rents, issues and profits, from time to time, during his life, accruing and growing out of said properties, first deducting therefrom all expenses having to do with the upkeep of said properties, the payment of taxes, water rates, interest on incumbrances existing and outstanding at the time of my death, as well as commissions that may from time to time become payable to the executor and trustee.

"After my husband's death my property shall descend as follows:

"One Thousand Dollars ($1,000.00) to the Hawaiian Trust Company, Limited, the domestic corporation hereinabove named as trustee. The interest derived from this One Thousand Dollars so held in trust, over and above such commissions as may by law be allowed the trustee, shall be expended by said trustee in caring for and keeping in good order that plot of ground in the Wailuku cemetery in the town of Wailuku, County of Maui, Territory of Hawaii, commonly known as the Kalua family burial ground, this being the same ground wherein our daughter Agnes is laid to rest.

"All of the balance of my property, after the death of my husband, over and above said one thousand dollars hereinabove placed in trust, shall descend to and be inherited absolutely by—

"(1) The Kaahumanu Church of Wailuku (native), a domestic corporation; and

"(2) The Wailuku Union Church (foreign), also a domestic corporation; said corporations to take said property share and share alike.

"In Witness Whereof I have hereunto set my hand this 2nd day of May, 1912.

"Polly Kalua.

"Signed by Polly Kalua, and declared by her to be her last will and testament, in the presence of us, who, at her request, and in her presence, and in the presence of each other, have hereto subscribed our names as witnesses this second day of May, 1912.

"Enos Vincent.
"Marie G. Vincent.
"Daniel H. Case."

Mr. Case, who is a member of the bar of this court, when called as a witness for the proponent, testified in substance as follows: That he had known the deceased for many years; that he was generally familiar with her property, having acted as agent for Mr. W. R. Castle, who held a mortgage on testatrix' property, in the matter of collecting rents, etc.; that he was not Mrs. Kalua's confidential adviser and had never acted as her attorney in any matter in court; that Mrs. Kalua came to his office two or three days, possibly longer, before the execution of the will, and said she wished to make her will; that he (the witness) took a pencil and piece of paper and put down her name and the data which she then gave him; that he said to her, "To whom do you wish to leave your property?"; that testatrix said, "I want to give it to my husband for life;" that after his death she wished it to go to the two churches, naming them and further identifying them by reference to the pastors and the locations of such churches respectively. Witness then called the attention of the testatrix to the fact that she should make some provision for an executor, whereupon testatrix requested the witness to act in that capacity. This the witness declined to do, telling her that if she did not name any one the court would do so after her death when the matter of her will came up, at the same time calling to her attention the fact that it was quite common to have trust companies serve as executors and administrators. Witness testified that he then spoke of the Hawaiian Trust Company and was not sure whether he spoke of any other companies or not. Testatrix then said, "I will have that company serve as my executor," and directed that the witness, in drawing the will, make provision for one thousand dollars to be kept by the Hawaiian Trust Company, the interest of which to go towards keeping up the graves in their family burying lot. Witness testified that he asked the testatrix if she had any brothers or sisters or other

relatives whom she wished to remember, but testatrix said she had not; that Mrs. Kalua spoke English fluently and read that language easily; that several days later, when Mrs. Kalua returned to his office to execute the instrument, he had the will drawn up and submitted it to her; that she read it to herself, having it in her possession about ten minutes, and afterwards he read it to her; that witnesses were then called in, one the stenographer in Mr. Case's office and the other an attorney with whom Mr. Case was associated in a business way, and on their arrival he stated to them in the presence of Mrs. Kalua, "Mrs. Kalua had me call you over here as she wished you to sign her will as witnesses;" that when he finished reading the instrument to her he asked Mrs. Kalua in the presence of the other subscribing witnesses, "Is this your last will and testament," and she said, "Yes;" that thereafter she executed the will in the presence of the witnesses, who thereupon signed their names in her presence and in the presence of each other as subscribing witnesses. On cross-examination Mr. Case testified that he was a member and trustee of the Wailuku Union Church at the time of the execution of the will.

There is not a syllable of testimony, not a hint, that Mr. Case or any other person requested or suggested any disposition of the property. All that was done was done at the instance and upon the request of the testatrix. The contestant called no witnesses as to testatrix' mental condition. So far from the testimony tending to show mental weakness, it was uncontradicted that testatrix was a woman of sound mentality, much interested in church work and in charitable projects. The contestant himself testified that the testatrix was a member of the Kaahumanu Church, one of the beneficiaries named in the will; that she had been a delegate to church conventions on several occasions and that she had once discussed with him leaving her property

to the Hawaiian Board. He further testified, uncontradictedly, that the property which his wife owned at the time of her death had previously been owned by him, having been bought by him, but that he had turned it over to her at a time when he was very sick, when he thought he was not going to live; that she had told him she was going to turn the property back to him; that he and his wife had lived together in harmony up to the time of her death, and that she had never told him about having made a will.

After having carefully examined the record in this case we are constrained to the conclusion that there is no testimony which would justify a submission to the jury on any issue as to testatrix' mental soundness, the execution of the will or undue influence on the part of Mr. Case or any other person. If a will is set aside upon such a flimsy showing as was here made upon any of the issues few wills can hope to stand. The power of the court, in a proper case, to direct a verdict for one party or the other is undoubted. *Will of Charles Notley,* 15 Haw. 435; *Leach* v. *Burr,* 188 U. S. 510; 40 Cyc. 1333. In this connection the remarks of Mr. Justice Brewer in *Beyer* v. *LeFevre,* 186 U. S. 114, 125, are pertinent and commend themselves to our judgment as a wholesome expression of the law that should control the action of courts in matters of this character:

"One who is familiar with the volume of litigation which is now flooding the courts cannot fail to be attracted by the fact that actions to set aside wills are of frequent occurrence. In such actions the testator cannot be heard, and very trifling matters are often pressed upon the attention of the court or jury as evidence of want of mental capacity or the existence of undue influence. Whatever rule may obtain elsewhere we wish it distinctly understood to be the rule of the Federal courts that the will of a person found to be of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence. The expressed intentions of the testator should not be thwarted without clear reason therefor."

The foregoing we consider as applicable in the courts of this Territory as in the Federal courts.

A number of the assignments of error go to rulings rejecting or admitting evidence. These need not be considered in detail. The rulings were either correct or else were harmless errors in the view that we take of the case. The judgment of the court below is right and should be affirmed.

Affirmed.

*Lorrin Andrews* for plaintiff in error.

*Frear, Prosser, Anderson & Marx* for defendant in error.